UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FREDERICK JOSEPH JENNIS,

                            Plaintiff,

      -against-                         5:03-CV-0772
                                            (LEK/GHL)

DUANE ROOD, *et al.*,

                            Defendants.

## MEMORANDUM-DECISION AND ORDER[1]

### I. Background

Plaintiff Frederick Joseph Jennis ("Plaintiff" or "Jennis") brings this action against Defendants Duane Rood, *et al.*, ("Defendants") alleging violations of 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, as well as violations under the common law of the State of New York, and seeking money damages and return of property.  See Second Amended Complaint (Dkt. No. 12) at ¶ 1.

Defendants have filed two Motions to dismiss, seeking dismissal pursuant to Federal Rules of Civil Procedure 8(a)(2), 12(b)(3), and 12(b)(6).  See Defts' First & Second Motions to Dismiss (Dkt. Nos. 35 & 36).  Plaintiff has filed a memorandum of law in opposition to Defendants' Motions.  See Plntf's Opp. Papers (Dkt. No. 42).

For the reasons that follow, Defendants' Motions are granted, and this case is dismissed and closed.

---

[1] For printed publication by the Federal Reporters.

## II.  Facts

The following are the general facts, as presented in Plaintiff's Complaint.

On Friday, June 23, 2000, at approximately five o'clock in the evening, Plaintiff was outside of his residence, located at 104 Mooney Avenue, in Syracuse, New York, when he saw Defendants Phinney and Rood.  Second Amended Complaint (Dkt. No. 12) at ¶ 22.  Plaintiff claims that he was "walking slowly and quietly down [his] driveway holding an axe in a non-threatening manner down at [his] right side and purposely maintaining at least 25 feet from officers as [he] was in a non-violent protesting state of mind...."  Id.  The officers told Plaintiff to drop the axe that he was carrying, but Plaintiff refused to comply, and Defendant officers shot at Plaintiff four times, hitting him twice.  Id.  Plaintiff alleges that Defendants should have and could have used a less harmful method of securing Plaintiff's compliance - such as using pepper spray.  Id.

Plaintiff was arraigned by a Syracuse City Court judge while in his hospital room at University Hospital in Syracuse.  Id. at ¶ 26.  Plaintiff was arraigned on charges including attempted assault on a police officer.  Id.

Plaintiff claims that both a Grand Jury investigation and a Syracuse Police Department inter-departmental investigation of the shooting occurred while he was in the hospital, and that because of his condition Plaintiff was unable to testify before the Grand Jury and present his side of the case. Id. at ¶ 27.  Plaintiff was indicted in July 2000.  Id.

Plaintiff claims that while he was in the hospital, he suffered from extreme pain, was under the effects of morphine and anesthesia, and that he was weak, unable to eat and losing weight.  Id. Furthermore, Plaintiff claims that his movement was restricted by "invasive medical equipment",

2

and by physical restraints placed on Plaintiff by Defendant Onondaga County Sheriff's Deputies. Id. at ¶¶ 27, 51.

Plaintiff claims that just after he had woken up from surgery, while he wanted to sleep, and asked to be left alone to recover, Defendant Officers Perrin and Werbeck questioned him; and that Defendants continued to question Plaintiff while shaking his left leg and causing pain, and while Plaintiff was in the condition described above, and shackled to the bed.  Id. at ¶ 51.

Plaintiff further alleges that Defendant officers exceeded the scope and authority of the search warrant that had been issued (Defendant Detective Derby), failed to properly train officers in use of deadly force, failed to obtain Plaintiff's side of the story (Defendant Captain Heenan), and fabricated or lied about facts so as to ensure Plaintiff would not receive bail, would be indicted, and would be convicted - going so far as to report that Plaintiff's sister had stated that Plaintiff "had a 'bad temper'" (Defendant Officer Eggers), which Plaintiff claims is not true.  See id. at ¶¶ 31-36. Plaintiff claims that when bail was imposed, he was also, *inter alia*, restricted from going to his home on Mooney Avenue.  Id. at ¶ 37.

Plaintiff seeks, *inter alia*, several million dollars in damages and return of property.

### III.  Discussion

*A.  Standards of Law*

Defendants' Motions seek relief pursuant to the provisions of Federal Rules of Civil Procedure 8(a)(2), 12(b)(3) and 12(b)(6).  See Defts' First & Second Motions to Dismiss (Dkt. Nos. 35 & 36).

### 1.  Rule 8(a)(2)

"Consistent with the pleading standards of Fed.R.Civ.P. 8, 'a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief,"'.... The complaint must '"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."'" Karas v. Katten Muchin Zavis Rosenman, A Partnership, No. 04 Civ. 9570(SHS), 2006 WL 20507, at *3 (S.D.N.Y. Jan. 3, 2006) (citing and quoting Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quoting FED. R. CIV. P. 8(a)(2)); Conley v. Gibson, 355 U.S. 41, 45-47 (1957)).  In order for a plaintiff to maintain a claim under § 1983, the complaint must contain more than broad, simple or conclusory statements.  The complaint must set forth specific allegations and facts which illustrate a violation of one's rights as protected by the Constitution.  See Hall v. Dworkin, 829 F. Supp. 1403, 1412 (N.D.N.Y. 1993) (McAvoy, C.J.) (citing, *inter alia*, Spear v. Town of West Hartford, 954 F.2d 63 (2d Cir. 1992); Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987)).  Therefore, general allegations or conclusions of law will not suffice in defeating a defendant's motion to dismiss.  Plaintiff must, instead, "assert a cognizable claim and allege facts that, if true, would support such a claim." Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). See also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).

### 2. Rule 12(b)(3)

A Rule 12(b)(3) challenge "is the *forum non conveniens* analysis, and a district court may dismiss a case if an alternative forum exists where the case may be heard, and if trial in the present forum 'would be oppressive and vexatious to a defendant.'" Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS, 315 F. Supp. 2d 286, 290 (W.D.N.Y. 2004) (citations omitted).  Another

forum is proper if: "(1) the defendants are subject to service of process there and (2) the forum permits litigation of the subject matter of the dispute." Id.  But, the inquiry does not end there, for if an adequate alternative forum is found, the Court must also consider "public and private interest factors in deciding whether to give deference to the plaintiff's choice of forum." Id.

> The public factors include court congestion in the chosen forum, the local interest in deciding local controversies at home, the interest in having the trial in a forum that is familiar with the governing law, the difficulties in applying foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty.  Private factors include the ease of access to sources of proof and the ability and cost of procuring witnesses....

Id.  Furthermore,

> 28 U.S.C. § 1404(a),... allows the Court in its discretion to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice."  The burden is on the moving party to demonstrate entitlement to transfer on this ground.... In addressing the request, the Court must balance the following factors: "(1) the weight accorded the plaintiff's choice of forum; (2) the place where the operative facts took place; (3) the convenience of the parties; (4) the convenience of the witnesses; (5) the availability of process to compel unwilling witnesses; (6) the location of relevant documents and the relative ease of sources of proof; and (7) trial efficiency and the interests of justice."...

> It is well established that a plaintiff's choice of forum should not be disturbed unless the balance of factors tips heavily in favor of transfer.

United Computer Capital Corp. v. Daidone, No. 5:02-CV-1431, 2005 WL 579565, at *4 (N.D.N.Y. Mar. 7, 2005) (Mordue, D.J.) (citing Fine Foods Int'l LP v. N. Am. Fine Foods, Inc., No. 99-CV-1062 (ILG), 1999 WL 1288681, *5 (E.D.N.Y. Nov. 12, 1999)).

Generally, a strong presumption exists in favor of the forum in which Plaintiff has chosen to bring suit.  The party moving for change of venue bears the burden of "establish[ing] that the alternative forum is 'clearly more appropriate.'...Dismissal will generally be inappropriate unless 'the balance of convenience tilts strongly in favor of trial in the foreign forum.'" Minibooster Hydraulics, 315 F. Supp. 2d at 290 (citations omitted).

Upon consideration of a motion to dismiss pursuant to Rule 12(b)(3), the Court "must accept the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Micromuse, Inc. v. Aprisma Mgmt. Tech., Inc., No. 05 Civ. 0894SAS, 2005 WL 1241924, at *2 (S.D.N.Y. May 24, 2005) (citations omitted).  See also Matera v. Native Eyewear, Inc., 355 F. Supp. 2d 680, 681 (E.D.N.Y. 2005) (citations omitted); Meteoro Amusement Corp. v. Six Flags, 267 F. Supp. 2d 263, 266 (N.D.N.Y. 2003) (McCurn, Senior D.J.); Daou v. Early Advantage, LLC, 410 F. Supp. 2d 82, 89-90 (N.D.N.Y. 2006) (Kahn, D.J.) (discussing this same standard for Rule 12(b)(3) motions).

### 3.  Rule 12(b)(6)

Upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court may dismiss a complaint "only if 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"... Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff."... However, the court need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations.... Nevertheless, "[i]n assessing the legal sufficiency of a claim [under 12(b)(6)], the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference... and documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference."

Moreover, pleadings submitted by *pro se* litigants "should be 'construed liberally,'" and a complaint "should not be dismissed unless 'it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations.'"... A "dismissal on the pleadings is never warranted unless the plaintiff's allegations are doomed to fail under any available legal theory."

Toney v. Goord, No. 04-CV-1174, 2006 WL 2496859, at *5 (N.D.N.Y. Aug. 28, 2006) (McAvoy, Senior D.J.; Treece, M.J.) (citing and quoting, *inter alia*, Equal Employment Opportunity Comm'n v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45- 46 (1957) & citing Drake v. Delta Air Lines, Inc., 147 F.3d 169, 171 (2d Cir. 1998)); Harris

v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999); Papasan v. Allain, 478 U.S. 265, 286 (1986)).

### B. First Motion to Dismiss - By County of Onondaga Sheriff's Office (Dkt. No. 35)

#### 1. Statute of Limitations

Defendants claim that because Plaintiff did not serve Defendants with the Complaint (and Amended Complaints) until the Second Amended Complaint was served on Defendants on January 4, 2005, the matter is time-barred because the incident(s) complained of occurred more than four years and five months before service on Defendants. See Defts' Mem. of Law (Dkt. No. 35, Attach. 3) at 4-5. However, Defendants are mistaken on the law in Federal court. As District Judge Colleen McMahon, of the Southern District of New York, has held:

> [The federal complaint] was apparently never served on [Defendants], so as far as [Plaintiffs, who voluntarily withdrew the suit,] are concerned the lawsuit never existed. The Court sees it otherwise. Actions are commenced *by filing*, not by service, in federal court.... Moreover, the action was assigned to a district judge and a magistrate judge on the day it was filed. As far as we are concerned, a lawsuit begins the day it shows up on our docket. So the lawsuit was not a "phantom" one....

Spehar v. Fuchs, No. 02-Civ.9352-CM, 2003 WL 23353308, at *2 n.2 (S.D.N.Y. June 18, 2003) (emphasis added) (citing FED. R. CIV. P. 3). See also Henderson v. United States, 517 U.S. 654, 657 n.2 (1996) ("In a suit on a right created by federal law, filing a complaint suffices to satisfy the statute of limitations.") (citing West v. Conrail, 481 U.S. 35, 39 (1987)).

Although in Fuchs it was the plaintiffs (who had voluntarily withdrawn their lawsuit prior to service of the complaint upon defendants) who contended that the prior lawsuit never existed, the procedural mechanism for commencing a lawsuit in Federal court - as addressed by Judge McMahon - is the same for this case. The filing of the Complaint, not the service of the Complaint,

is the marker in time from which we then evaluate Statute of Limitations claims.

The United States Supreme Court has determined that for § 1983 claims, where a State has more than one Statute of Limitations, the applicable Statute of Limitations is the State general limitation for personal injury claims. See Owens v. Okure, 488 U.S. 235, 249-50 (1989) ("We... hold that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."). Section 215 of New York's C.P.L.R. provides for a one-year Statute of Limitations in actions against sheriffs or constables, or for actions sounding in, *inter alia*, assault, battery, or false imprisonment. But, that limitation is more specific, as opposed to the more general provision of C.P.L.R. 214 - which, as this Court reads the Supreme Court precedent, is the Statute of Limitations to be applied. See Owens, 488 U.S. 235. Thus, the applicable Statute of Limitations from New York law is **three years**. See N.Y. C.P.L.R. 214(5) (McKinney 1990).

In the case at bar, Plaintiff complains of incidents that occurred from June 23, 2000 to July 8, 2000. See Amended Complaint (Dkt. No. 12). Plaintiff filed his original Complaint with this Court on June 23, 2003. See Complaint (Dkt. No. 1). Because the original filing was timely, this Court deems the matter to have been commenced within the applicable Statute of Limitations. Therefore, Defendants' Motion to dismiss fails on this ground.

### 2.  Failure to Comply with Federal Rule of Civil Procedure 4

Again, in federal courts, an action is commenced by filing, not by service. See Fuchs, 2003 WL 23353308, at *2 n.2; Wilson v. Diocese of New York of Episcopal Church, No. 96 Civ. 2400(JGK), 1998 WL 82921, at *8 n.10 (S.D.N.Y. Feb. 26, 1998). Pursuant to Federal Rule of

Civil Procedure 4(m), service of the summons and complaint upon defendant or defendants must take place within 120 days of the filing of the complaint, otherwise the Court may dismiss the action without prejudice.[2]  See FED. R. CIV. P. 4(m).  It is true that "the filing of an amended complaint does not extend the 120 day period... [but] so long as the amended complaint is filed and served within 120 days of filing the original complaint and does not add any causes of action barred by the statute of limitations, it does not matter that it is the amended summons and complaint that is served on a defendant named in the original complaint."  Wilson, 1998 WL 82921, at *9 (citations omitted).  However, in the matter at bar, the following occurred.

On June 23, 2003, Plaintiff filed the Original Complaint.  See Complaint (Dkt. No. 1).  On July 17, 2003, an Order of the Court was filed directing Plaintiff to file an Amended Complaint that complied with the requirements of Federal Rules of Civil Procedure 8 and 10.  See July 2003 Order (Dkt. No. 4).  On August 14, 2003, Plaintiff filed his Amended Complaint.  See Amended Complaint (Dkt. No. 5).  But then on September 8, 2003, Plaintiff filed a Motion seeking to Amend the Amended Complaint and file a Second Amended Complaint.  See Motion to Amend (Dkt. No. 6).  On October 2, 2003, an Order of the Court was filed that granted Plaintiff's Motion to Amend and file a Second Amended Complaint in this matter.  See October 2003 Order (Dkt. No. 9). However, the Court stated that the Second Amended Complaint was to be filed, "if at all", within 30 days of the Order.  See id. at 3.  The "if at all" language suggested that Plaintiff had the option of proceeding on the Amended Complaint or submitting and filing the Second Amended Complaint.

---

[2] It is to be noted, however, that although Rule 4(m) provides 120 days for service on defendants following the filing of a complaint, both General Order 25 and Local Rule 4.1 of the Northern District of New York provide that service shall be accomplished within sixty (60) days of the filing of the complaint.  And, "[i]n no event shall service of process be completed after the time specified in Fed. R. Civ. P. 4."  N.D.N.Y. L.R. 4.1.

And, this Court was very clear that Plaintiff needed to sign and file the Second Amended Complaint separately, and could not simply rely on the Proposed Amended Complaint that had been submitted with his Motion.  See id. at 3 n.2.

Plaintiff did not file his Second Amended Complaint until December 6, *2004*, see Second Amended Complaint (Dkt. No. 12), which filing occurred only after Plaintiff was contacted by this Court's paralegal inquiring into and discussing the status of Plaintiff's filing, see November 2004 Letter (Dkt. No. 11).[3]  And, aside from the failure of Plaintiff to file his Second Amended Complaint until more than one year after this Court's October 2003 Order, Plaintiff also failed to serve any of the defendants in this matter with either the Original Complaint or First Amended Complaint.  Plaintiff finally began serving Defendants with the Second Amended Complaint, and counsel appeared for Defendants, in January of 2005.  See, *inter alia*, Dkt. Nos. 13, 14, 18, 19.

Defendants now argue that Plaintiff's First Amended Complaint (Dkt. No. 5) was the controlling filing in this case as far as time limits upon service are concerned under Federal Rule of Civil Procedure 4.  See Defts' Mem. of Law (Dkt. No. 35, Attach. 3) at 5-8.  According to Defendants, because this Court's October 2003 Order gave Plaintiff the *option* to file his Second Amended Complaint (the "if at all" language, see *supra*), but did not require it, the First Amended Complaint (Dkt. No. 5) was the officially controlling pleading, and that service was improper overall because it occurred 509 days after the lawsuit was commenced by Plaintiff Jennis.  Id.

Service should have been perfected within 120 days of the filing of the Original Complaint -

---

[3] And, it should be further noted that even after filing his Second Amended Complaint at that late juncture, Plaintiff then sought to amend *yet again*, and requested permission to file a Third Amended Complaint, see Motion to Amend (Dkt. No. 17), which this Court denied, see May 2005 Order (Dkt. No. 44).

the filing of the lawsuit on June 23, 2003.  See Cioce v. County of Westchester, No. 02 Civ.3604 HB, 2003 WL 21750052, at *3 (S.D.N.Y. July 28, 2003) (citing cases) ("It is clear that [Plaintiff] was cognizant of Rule 4(m).  However, he was mistaken in thinking that time began to run under the Rule from the filing of any amended complaint and not the institution of the lawsuit.").  See also, inter alia, Payne v. United States, 181 F.R.D. 676, (M.D. Fla. 1998) (the time period contained in Rule 4(m) runs from the filing of the Original Complaint) (cited by Cioce, 2003 WL 21750052, at *3); 4B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1137 (3d ed. 2006) ("filing an amended complaint in itself does not toll the service period, thereby providing an additional 120 days for service") (cited by Cioce, 2003 WL 21750052, at *3).

Even if Plaintiff were to seek refuge under the provision that an Amended Complaint that adds new defendants would allow for a new 120-day period, see WRIGHT & MILLER, supra, Plaintiff's case would still be dismissed because the new 120-day period only exists as to the added defendant(s), see id., and in this case Plaintiff missed the 120-day window counting from the filings of both the Original Complaint (Dkt. No. 1) and the First Amended Complaint (Dkt. No. 5).

As this Court understands Plaintiff's arguments in reply, Plaintiff seems to suggest that the 120-day time period should be tolled to exclude the time during which his in forma pauperis application was pending.  See Plntf's Reply Mem. of Law (Dkt. No. 42, Attach. 2) at 6.  However, Plaintiff filed his application for in forma pauperis status on July 3, 2003, and the application was granted by this Court in an Order filed July 17, 2003 - the application was pending for only 14 days.

Plaintiff also cites to the case of Henderson v. United States, 517 U.S. 654 (1996), in support of his argument for some kind of tolling under Federal Rules of Civil Procedure 3 and 4.  See Plntf's Reply Mem. of Law (Dkt. No. 42, Attach. 2) at 6.  However, as this Court reads Henderson,

the case is clearly distinguishable from the facts herein, especially given that plaintiff's ongoing attempts in the cited case to perfect service within the applicable time period as set forth in the Rules.

Plaintiff further argues that he has previously cited a case in which the Amended Complaint was deemed filed as of the date of that judge's order granting leave to amend.  The cited case is Duquin v. Goord, 99 Civ. 12458(RWS), 2004 WL 2884424 (S.D.N.Y. Dec. 13, 2004)[4], see Plntf's Motion for Extension of Time (Dkt. No. 34), which addresses decisions from the Western and Southern Districts of New York.  Those decisions are not binding upon this Court.  And, furthermore, in the case at bar, this Court specifically held that the Proposed Amended Complaint was not to be filed as the Amended Complaint.  Plaintiff was to separately sign and file the Second Amended Complaint, *if at all*, within 30 days of the Court's Order.  See October 2003 Order (Dkt. No. 9) at 3 & n.2.

At base, the issue is one of Plaintiff's failure to prosecute this action, and failure to comply with the provisions of Federal Rule of Civil Procedure 4.  After review of the Record, the submissions of the parties, and the relevant law, the Court hereby grants Defendants' Motion to dismiss (Dkt. No. 35).

Given this Court's determination as set forth above, the Court will not address the remaining issues contained in the submissions of the parties concerning the Motion at Docket Number 35.

---

[4] Mistakenly cited by Plaintiff as a 2005 Southern District case.  See Plntf's Motion for Extension of Time (Dkt. No. 34).  Also published in N.Y. L.J., Jan. 3, 2005, at 25 col. 1.

12

### C.  Second Motion to Dismiss - By Defendants Syracuse Police Officers (Dkt. No. 36)

#### 1. Excessive Force Claim

"The Fourth Amendment governs a claim that excessive force was used in connection with an arrest.... In determining whether excessive force was employed, the question is whether the officer's actions were 'objectively reasonable' in light of the facts and circumstances confronting her, without regard to her underlying intent or motivation."  Golio v. City of White Plains, No. 06 CIV. 1691 CM/GAY, 2006 WL 3199140, at *4 (S.D.N.Y. Nov. 2, 2006) (citing Graham v. Connor, 490 U.S. 386, 388, 397 (1989)).

Again, as admitted by Plaintiff in his Complaint, Plaintiff was "walking slowly and quietly down [his] driveway holding an axe in a non-threatening manner down at [his] right side and purposely maintaining at least 25 feet from officers as [he] was in a non-violent protesting state of mind...."  Second Amended Complaint (Dkt. No. 12) at ¶ 22.  The officers gave Plaintiff verbal commands to drop the axe, but Plaintiff refused to comply.  Id.  This continued for a distance of over 110 feet.  Id.  Defendant Syracuse Police Officers Rood and Phinney then proceeded to shoot at Plaintiff four times, hitting him twice.  Id.  Plaintiff states that he was in his driveway after "closing-down the house next door", id. at ¶ 60, but Defendants contend that Plaintiff had actually committed the felony of burglary in the second degree in the neighboring house, for which Plaintiff was convicted, and for which crime Defendant officers were seeking to arrest Plaintiff, see Defts' Mem. of Law (Dkt. No. 36) at 10.

The United States Supreme Court has addressed the issue of excessive use of force by the police, and has stated the following:

cases establish that claims of excessive force are to be judged under the Fourth

Amendment's "'objective reasonableness'" standard.... Specifically with regard to deadly force, we explained in *Garner* that it is unreasonable for an officer to "seize an unarmed, nondangerous suspect by shooting him dead."... But "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."

Brosseau v. Haugen, 543 U.S. 194, 197-98 (2004) (per curiam) (citing, *inter alia*, Saucier v. Katz, 533 U.S. 194, 201 (2001); Tennessee v. Garner, 471 U.S. 1 (1985)).  Furthermore, the determination is fact-intensive, and turns on the factual scenario of each case.  Brosseau, 543 U.S. at 201.  The Supreme Court has also held that "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."  Garner, 471 U.S. at 11-12.  See also 5 AM. JUR. 2D *Arrest* § 113 (2006).

This Court, "[i]n considering whether a seizure by a law enforcement officer was reasonable, under the Fourth Amendment,... must judge from the perspective of a reasonable officer on the scene, rather than with the vision of hindsight."  6A C.J.S. *Arrest* § 51 (2006) (citations omitted).  In the State of New York, the relevant statutory authority provides, in pertinent part:

1. ... deadly physical force may be used [to effect arrest, or in self-defense or to defend a third person from what is reasonably believed to be the use or imminent use of physical force] only when [a police officer or peace officer] reasonably believes that:

...

(b) The offense committed or attempted by such person was a felony and that, in the course of resisting arrest therefor or attempting to escape from custody, such person is armed with a firearm or deadly weapon; or

(c) Regardless of the particular offense which is the subject of the arrest or attempted escape, the use of deadly physical force is necessary to defend the police officer or peace officer or another person from what the officer reasonably believes to be the use or

14

imminent use of deadly physical force.

N.Y. PENAL LAW § 35.30.

In the case at bar, Plaintiff ignored the repeated commands of law enforcement officers to drop the axe (a deadly weapon) that Plaintiff was carrying.  Although it is not entirely clear what Plaintiff means by asserting that he was of a "non-violent protesting state of mind" in the described scenario, it is clear that Plaintiff was in a form of a protesting state of mind, did not heed the commands of the officers, and was carrying a deadly weapon at the time police were attempting to apprehend him.  Thus, the officers faced a situation in which they were justified in using deadly force against Plaintiff.

In light of the foregoing, Plaintiff has failed to allege sufficient facts upon which to state a claim for relief for the use of excessive force.  Therefore, that claim is dismissed.

## 2.  Claimed Denial of Access to the Courts

Plaintiff claims denial of access to the courts, in violation of the First Amendment to the United States Constitution and 42 U.S.C. § 1983, because, although he was notified of the Grand Jury proceedings and was called to provide testimony, his medical condition at the time prevented his attendance at the proceedings, and he was thus not permitted the opportunity to testify in front of the Grand Jury of Onondaga County prior to the issuance of an indictment against him.  See Second Amended Complaint (Dkt. No. 12) at ¶¶ 26-30.  However, the relevant provisions of New York law discuss how, generally, the Foreperson and members of the Grand Jury run and govern all Grand Jury proceedings, with the District Attorney as a legal adviser and presenter with statutory duties - and with the supervising Judge being available for recourse and rulings, if necessary.  See, *inter*

*alia*, N.Y. CRIM. PROC. LAW § 190.50; 32 N.Y. JUR. 2D *Criminal Law* § 1067; People v. Lindahl, 33

A.D.3d 1125 (N.Y. App. Div. 3d Dep't 2006); People v. Brown, 384 N.Y.S.2d 968 (County Ct.,

N.Y. County, 1976); Matter of Nassau County Grand Jury, 382 N.Y.S.2d 1013 (County Ct., Nassau

County, 1976).  Any issues of proper or improper procedure aside, Plaintiff does not name, *inter*

*alia*, the Onondaga County District Attorney, or anyone else involved in, or responsible for, the

Grand Jury proceedings as defendants in this matter.  The Defendants named in this lawsuit (police

officers) are not the proper parties from whom to seek the requested relief.

In light of the foregoing, Plaintiff has failed to allege sufficient facts upon which to state a

claim for relief against the named Defendants for the denial of access to the courts.  Therefore, that

claim is dismissed.

### 3.  Excessive Bail Claim

Plaintiff seeks damages against Defendants for their alleged misleading or false police

reports and statements, which Plaintiff claims led to his suffering the imposition of excessive bail.

See Second Amended Complaint (Dkt. No. 12) at ¶¶ 31-39.  However, in New York State, police

officers do not generally have authority to set bail - that authority is reserved to the courts[5] - and,

thus, the officers in the matter at bar are not the proper subjects of a suit based on a claim of

excessive bail.  See, *inter alia*, N.Y. CRIM. PROC. LAW §§ 140.20, 510.20, 510.30, 530.20

(McKinney 2006); 32A N.Y. JUR. 2D *Criminal Law* § 1311 (2006).  See, generally, James v. York

County Police Dep't, 160 Fed. Appx. 126, 133 (3d Cir. 2005) (unpublished; per curiam); People ex

---

[5] Indeed, as Plaintiff states, he was arraigned before, and bail was set by, a Syracuse City Court Judge; and an Onondaga County Court Judge also made a bail determination.  See Amended Complaint (Dkt. No. 12) at ¶¶ 31, 37, 40.

rel. Klein v. Krueger, 25 N.Y.2d 497 (1969); People v. Maldonado, 407 N.Y.S.2d 393 (Crim. Ct.,

N.Y. County 1978);  People v. Melville, 308 N.Y.S.2d 671 (Crim. Ct., N.Y. County 1970).

In light of the foregoing, Plaintiff has failed to allege sufficient facts upon which to state a

claim for relief for the imposition of excessive bail.  Therefore, that claim is dismissed.

### 4.  Malicious Prosecution Claim

Although Plaintiff alleges malicious prosecution, none can be supported on the facts alleged.

The Second Circuit has held that: "[u]nder New York law, '[t]he elements of an action for malicious

prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack

of probable cause, and (4) malice.'... Liability for the tort of malicious prosecution also gives rise to

liability under 42 U.S.C. § 1983."  Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)

(citing and quoting Colon v. City of New York, 60 N.Y.2d 78, 82 (1983); Cook v. Sheldon, 41 F.3d

73, 77-79 (2d Cir. 1994)).

Furthermore, the Savino Court held that: "the existence of probable cause is a complete

defense to a claim of malicious prosecution in New York.... [And,] under New York law, indictment

by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that

the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct

undertaken in bad faith.'"  Savino, 331 F.3d at 72 (emphasis in original; citations omitted).

In the case at bar, the Grand Jury indicted Plaintiff, and a petit jury convicted Plaintiff of all

of the counts (including menacing), save one count of attempted assault of a police officer.  See

Defts' Mem. of Law (Dkt. No. 36) at 10-11; Second Amended Complaint (Dkt. No. 12) at ¶¶ 40-42

(stating only that Plaintiff was acquitted of the charge of attempted assault of a police officer - with

no mention of the disposition of any of the other charges).  With regard to the one count upon which

Plaintiff was acquitted, this Court finds that Plaintiff has failed to allege any facts or evidence upon

which to state a claim or rebut the presumption of probable cause to show that "the indictment was

procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad

faith.'"  Savino, 331 F.3d at 72; see also Second Amended Complaint (Dkt. No. 12) at ¶¶ 40-50;

Plntf's Reply Mem. of Law (Dkt. No. 42, Attach. 2) at 9, (Dkt. No. 42, Attach. 3) at 6-8.  And, it is

Plaintiff who bears the burden of proof in attempting to rebut the presumption of probable cause

arising from an indictment.  Savino, 331 F.3d at 73 (citing Bernard v. United States, 25 F.3d 98, 104

(2d Cir. 1994)).

     In light of the foregoing, Plaintiff has failed to allege sufficient facts upon which to state a

claim for relief for malicious prosecution.  Therefore, that claim is dismissed.

### 5.  Claims of Wrongful Custodial Interrogation and Denial of Due Process

     Plaintiff alleges that while he was in the hospital following the shooting incident, he suffered

from extreme pain, was under the effects of morphine and anesthesia, and that he was weak, unable

to eat and losing weight.  See Second Amended Complaint (Dkt. No. 12) at ¶ 27.  Furthermore,

Plaintiff claims that his movement was restricted by "invasive medical equipment", and by physical

restraints placed on Plaintiff by Defendant Onondaga County Sheriff's Deputies.  Id. at ¶¶ 27, 51.

Thereafter, Plaintiff alleges that he was interrogated unconstitutionally while in custody, and

without Miranda warning, as Defendant Officers Perrin and Werbeck questioned Plaintiff just after

he had woken up from surgery, while he wanted to sleep, and while he asked to be left alone to

recover; and that Defendants continued to question Plaintiff while shaking his left leg and causing

pain, and while Plaintiff was in the condition described above, and shackled to the bed.  Id. at ¶ 51; Plntf's Reply Mem. of Law (Dkt. No. 42, Attach. 3) at 8-9.

The Supreme Court has held that: "[s]tatements compelled by police interrogations of course may not be used against a defendant at trial,... but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs."  Chavez v. Martinez, 538 U.S. 760, 767 (2003) (Thomas, J.) (citing, *inter alia*, Brown v. Mississippi, 297 U.S. 278, 286 (1936); United States v. Verdugo-Urquidez, 494 U.S. 259, 264 (1990)).  Furthermore, in a case concerning the Miranda warning, and use of un-Mirandized statements of a criminal defendant, the Supreme Court held that in extenuating circumstances interrogation may take place without a Miranda warning first being given - and the statements may thereafter be admissible.  See New York v. Quarles, 467 U.S. 649 (1984) (Rehnquist, J.).  However, even the dissent in Quarles stated that: "[a]ll the Fifth Amendment forbids is the introduction of coerced statements *at trial*."  Id. at 686 (Marshall, J., dissenting) (emphasis added).  *Black's Law Dictionary* defines "trial" as: "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding."  BLACK'S LAW DICTIONARY 1543 (8th ed. 2004).  A bail hearing is not a trial.  And, the Chavez Court, per the majority opinion by Justice Thomas, also made clear that: "[w]e have... established the *Miranda* exclusionary rule as a prophylactic measure to prevent violations of the right protected by the text of the Self-Incrimination Clause--the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning.... Accordingly,... failure to read *Miranda* warnings... did not violate... constitutional rights and cannot be grounds for a § 1983 action." Chavez, 538 U.S. at 772 (citing, *inter alia*, Warren v. Lincoln, 864 F.2d 1436, 1442 (8th Cir. 1989) (alleged Miranda violation not actionable under § 1983); Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d

Cir. 1994) (same); <u>Quarles</u>, 467 U.S. at 686 (Marshall, J., dissenting)).

Plaintiff in the case at bar has admitted that the statements taken from him *were not used* at criminal trial against him.  <u>See</u> Plntf's Reply Mem. of Law (Dkt. No. 42, Attach. 3) at 8.  Therefore, as this Court understands the Supreme Court precedent, despite Plaintiff's attempts to argue that the prosecution's use of the information from the hospital interrogation in the bail hearing and at other points in time violated Plaintiff's constitutional rights, the fact that the statements were not used against Plaintiff at trial means that Plaintiff has not stated or supported a claim for a violation of his Fifth Amendment rights.

The Supreme Court made clear in <u>Chavez</u>, however, that:

> Our views on the proper scope of the Fifth Amendment's Self-Incrimination Clause do not mean that police torture or other abuse that results in a confession is constitutionally permissible so long as the statements are not used at trial; it simply means that the Fourteenth Amendment's Due Process Clause, rather than the Fifth Amendment's Self-Incrimination Clause, would govern the inquiry in those cases and provide relief in appropriate circumstances.

<u>Chavez</u>, 538 U.S. at 773.  Plaintiff in the case at bar makes both Fifth and Fourteenth Amendment claims, and so although Plaintiff's Fifth Amendment claim fails under the analysis *supra*, this Court will evaluate Plaintiff's Fourteenth Amendment claim.  In doing so, this Court notes the similarity between the facts of the case at bar and those of the <u>Chavez</u> case.  In Section II.B of Justice Thomas' opinion in <u>Chavez</u>, joined by Chief Justice Rehnquist and Justice Scalia (and which this Court finds persuasive and instructive), the Justices stated that:

> The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law."... Although *Rochin* did not establish a civil remedy for abusive police behavior, we recognized in *County of Sacramento v. Lewis*, 523 U.S. 833, 846 [, 847-48, n.8 [(1998)], that deprivations of liberty caused by "the most egregious official conduct,"... may violate the Due Process Clause.  While we rejected, in *Lewis*, a § 1983 plaintiff's contention that a police officer's deliberate indifference during a

high-speed chase that caused the death of a motorcyclist violated due process,... we left open the possibility that unauthorized police behavior in other contexts might "shock the conscience" and give rise to § 1983 liability....

   We are satisfied that [the officer's] questioning did not violate [Plaintiff's] due process rights.  Even assuming, *arguendo*, that the persistent questioning of Martinez somehow deprived him of a liberty interest, we cannot agree with Martinez's characterization of Chavez's behavior as "egregious" or "conscience shocking."  As we noted in *Lewis*, the official conduct "most likely to rise to the conscience-shocking level" is the "conduct intended to injure in some way unjustifiable by any government interest."... Here, there is no evidence that Chavez acted with a purpose to harm Martinez by intentionally interfering with his medical treatment.  Medical personnel were able to treat Martinez throughout the interview,... and Chavez ceased his questioning to allow tests and other procedures to be performed.... Nor is there evidence that Chavez's conduct exacerbated Martinez's injuries or prolonged his stay in the hospital.  *Moreover, the need to investigate whether there had been police misconduct constituted a justifiable government interest given the risk that key evidence would have been lost if Martinez had died without the authorities ever hearing his side of the story.*

   The Court has held that the Due Process Clause also protects certain "fundamental liberty interest[s]" from deprivation by the government, regardless of the procedures provided, unless the infringement is narrowly tailored to serve a compelling state interest.... Only fundamental rights and liberties which are "'deeply rooted in this Nation's history and tradition'" and "'implicit in the concept of ordered liberty'" qualify for such protection.... Many times, however, we have expressed our reluctance to expand the doctrine of substantive due process,... in large part "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended,".... *Glucksberg* requires a "'careful description'" of the asserted fundamental liberty interest for the purposes of substantive due process analysis; vague generalities, such as "the right not to be talked to," will not suffice.... *We therefore must take into account the fact that Martinez was hospitalized and in severe pain during the interview, but also that Martinez was a critical nonpolice witness to an altercation resulting in a shooting by a police officer, and that the situation was urgent given the perceived risk that Martinez might die and crucial evidence might be lost.*  In these circumstances, we can find no basis in our prior jurisprudence,... or in our Nation's history and traditions to suppose that freedom from unwanted police questioning is a right so fundamental that it cannot be abridged absent a "compelling state interest."... We have never required such a justification for a police interrogation, and we decline to do so here.  The lack of any "guideposts for responsible decisionmaking" in this area, and our oft-stated reluctance to expand the doctrine of substantive due process, further counsel against recognizing a new "fundamental liberty interest" in this case.

<u>Chavez</u>, 538 U.S. at 774-76 (emphases added; citing, *inter alia*, <u>Rochin v. California</u>, 342 U.S. 165,

172, 174 (1952); Breithaupt v. Abram, 352 U.S. 432, 435 (1957); Washington v. Glucksberg, 521

U.S. 702, 721 (1997); Miranda v. Arizona, 384 U.S. 436, 477-78 (1966); other citations omitted).

     In the case at bar, Plaintiff admits that he was in very serious medical condition - a condition

which Plaintiff alleges continued long after his discharge from the hospital.  See Plntf's Reply Mem.

of Law (Dkt. No. 42, Attach. 2) at 11, (Dkt. No. 42, Attach. 3) at 8.  And, Plaintiff's own account of

his physical state while in the hospital evinces a sense that he was in critical condition.  See Second

Amended Complaint (Dkt. No. 12) at ¶¶ 27, 51; Plntf's Reply Mem. of Law (Dkt. No. 42, Attach. 2)

at 9.  Defendants contend, as did those in Chavez, that Plaintiff could have died from his injuries

and exigent circumstances existed where the police needed to take a statement from Plaintiff, as an

important, non-police witness, for their investigation into the shooting.  See Deft's Mem. of Law

(Dkt. No. 36) at 11-12.  Indeed, as noted by Defendants and Plaintiff, Defendant Officers did not

interfere with Plaintiff's medical care, and waited until Plaintiff was out of surgery and in recovery

(although still serious or critical) before attempting to question him.  See id.; Second Amended

Complaint (Dkt. No. 12) at ¶ 51.  Given Plaintiff's condition was serious, if not critical, by

Plaintiff's own admission, the Court finds that extenuating circumstances existed for the police to

seek information from Plaintiff pertinent to their investigation, as soon as they were able to question

Plaintiff - on the chance that Plaintiff would die from the wounds inflicted.  Such action, this Court

finds, was not shocking to the conscience so as to support Plaintiff's claim.[6]

---

    [6] The Court also notes that, in addition to Plaintiff's claims that he was wrongfully
questioned and interrogated, Plaintiff has also alleged and complained that Defendants, when
conducting their investigation of the incident and Plaintiff's arrest, did not seek Plaintiff's side of
the story, did not interview Plaintiff, and "did not take the time to get [Plaintiff's] version."  See
Second Amended Complaint (Dkt. No. 12) at ¶¶ 36, 47.  It appears to this Court that Plaintiff seeks
to argue two sides of the same coin - i.e. that the officers should have sought Plaintiff's side of the
story during their investigation (which took place while Plaintiff was in the hospital), but the

Therefore, based upon this Court's review of the facts and law, and in light of the foregoing, the Court finds that Plaintiff has failed to allege sufficient facts upon which to state a claim for relief for wrongful custodial interrogation and denial of due process.  Therefore, those claims are dismissed.

### 6.  Denial of Equal Protection Claims

Plaintiff's Equal Protection claims fail because Plaintiff has not alleged sufficient facts showing that selective adverse treatment was imposed upon him, and Plaintiff has not alleged sufficient facts supporting his membership in any protected class.  See LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980).  The Court in LeClair stated:

> [d]rawing from the... standards articulated in Moss and Berrios as well as from the immunity inquiry outlined in Wood, we believe that liability in the instant type of equal protection case should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

627 F.2d at 609-10 (citing cases).  Furthermore, the "malicious or bad faith intent to injure" formulation is a "murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply."  Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005) (citing LeClair, 627 F.2d at 608).  And, constitutional violations in this murky corner are rarely found to have occurred.  Bizzarro, 394 F.3d at 86-87.

Plaintiff argues that he can be treated as a "class of one" pursuant to the precedent created by the Supreme Court in Vill. of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam).  See Plntf's

---

Defendants should not have questioned Plaintiff while he was recovering in the hospital.  These arguments are contradictory and mutually exclusive.

23

Reply Mem. of Law (Dkt. No. 42, Attach. 2) at 9.  However, Olech is distinguishable from the case

at bar.  In Olech, Plaintiffs sought to have their home joined to the municipal water supply, but the

municipality at first refused and conditioned the joining to the Olechs granting a 33-foot easement to

the Village.  Other members of the community, though, were only required to grant a 15-foot

easement.  The municipality apparently singled out the Olechs because they had previously brought

an unrelated, successful lawsuit against the Village.  Although the Village ultimately consented to

only a 15-foot easement, the Court found an Equal Protection violation and a "class of one".  The

Court stated that:

> Our cases have recognized successful equal protection claims brought by a "class of one,"
> where the plaintiff alleges that she has been intentionally treated differently from others
> similarly situated and that there is no rational basis for the difference in treatment.... In so
> doing, we have explained that "'[t]he purpose of the equal protection clause of the
> Fourteenth Amendment is to secure every person within the State's jurisdiction against
> intentional and arbitrary discrimination, whether occasioned by express terms of a statute or
> by its improper execution through duly constituted agents.'"...
>
> That reasoning is applicable to this case.  Olech's complaint can fairly be construed as
> alleging that the Village intentionally demanded a 33-foot easement as a condition of
> connecting her property to the municipal water supply where the Village required only a
> 15-foot easement from other similarly situated property owners.... The complaint also
> alleged that the Village's demand was "irrational and wholly arbitrary" and that the Village
> ultimately connected her property after receiving a clearly adequate 15-foot easement.

Olech, 528 U.S. at 564-65 (citing, inter alia, Sioux City Bridge Co. v. Dakota County, 260 U.S.

441, 445 (1923); Allegheny Pittsburgh Coal Co. v. Comm'n of Webster County, 488 U.S. 336

(1989); Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Unlike the Olechs, however - who clearly were treated differently, and subjected to demands

not imposed on others in a similar situation - Plaintiff in the case at bar has failed to allege any

differential treatment that he received or was subjected to that would differ from the treatment

24

received by any other person similarly situated and under investigation for illegal activity, and especially for illegal activity and aggressiveness of such a nature as to require the police to use deadly physical force.  The police, *inter alia*, file reports of incidents and alleged crimes, investigate alleged crimes, collect evidence, execute search warrants, take witness statements, and take statements from those who know alleged victims and alleged perpetrators.  Plaintiff alleges that the police officers in the case at bar took such actions, but also falsified reports, exceeded the authority of search warrants, rushed through departmental reviews, and failed to obtain Plaintiff's version of the facts, so as to assist in the prosecution and conviction of Plaintiff for the alleged crimes.  However, Plaintiff fails to allege any facts with specificity that support said claims.  See Second Amended Complaint (Dkt. No. 12) at 10-12, 13-15.  In addition, other than alleging that Defendant officers intended to injure him because he was a civilian accused of a crime against Defendants' fellow officers, Plaintiff provides no factual support.  Without more, the Court finds no support for a claim of constitutional violation.  See Bizzarro, 394 F.3d at 87 ("We scoured the record for evidence of malicious or bad faith intent to injure the plaintiff, but found none beyond the fact that the farm inspector 'was in a spiteful mood[]' [in LeClair].... We therefore held that there was no constitutional violation.").

Although this Court must resolve all ambiguities and take all facts in a light favorable to Plaintiff on this Motion to dismiss, that standard does not mean that Plaintiff can allege or claim absolutely anything, without support, and expect this Court to take it as true and supportive of claims for relief.  As such, Plaintiff is not found to have pleaded any facts which would state a claim for violations of Equal Protection.  Therefore, those claims are dismissed.

**7. Malicious Abuse of Process Claim**

Again, this Court refers to the Second Circuit's ruling in <u>Savino</u>, which held that: "[i]n New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'... Malicious abuse of criminal process also supports liability under § 1983." <u>Savino</u>, 331 F.3d at 76-77 (citing <u>Cook</u>, 41 F.3d at 80).

Plaintiff's Second Amended Complaint alleges that Defendant Officers exceeded the scope of a search warrant, and took papers, money, tools, computer materials, and the like, which Plaintiff alleges were unrelated to any criminal investigation and with the police knowing that Plaintiff would be deprived of possession of the items for a long time.  <u>See</u> Second Amended Complaint (Dkt. No. 12) at ¶¶ 60-63.  However, Plaintiff admits that he was charged with, *inter alia*, burglary and criminal mischief.  <u>Id.</u> at ¶ 60.  And, as this Court understands from the record, the police were simply executing a search warrant in the course of investigating said crimes.  Indeed, as Defendants point out, Plaintiff's facts and arguments, as alleged, are insufficient to support his claims.  Plaintiff has failed to allege facts demonstrating either that the Defendants intended harm or intended a collateral objective that was outside legitimate ends.  <u>See</u> <u>Savino</u>, 331 F.3d at 77-78.  <u>See also</u> Defts' Mem. of Law (Dkt. No. 36) at 14.

In light of the foregoing, Plaintiff has failed to allege sufficient facts upon which to state a claim for relief for malicious abuse of process.  Therefore, that claim is dismissed.

## 8.  Claims of Fabrication of Evidence and Denial of Due Process

Plaintiff alleges that Defendant Officer Eggers, in investigating the incident of Plaintiff's arrest, and shooting, took a statement from Plaintiff's sister that Plaintiff had a "bad temper". Second Amended Complaint (Dkt. No. 12) at ¶ 70.  Plaintiff alleges that Eggers knew the statement to be false, but completed the report anyway, and that the report was used by the District Attorney's office against Plaintiff, and subjected Plaintiff to, *inter alia*, "disruption of life and freedom".  See id. at ¶¶ 71-75.

The Second Circuit has stated:

It is arguable that... the right should be identified as the right not to be deprived of liberty as a result of any governmental misconduct occurring in the investigative phase of a criminal matter.  A right defined that broadly, however, would cover too much ground because some investigative actions, though fairly labeled as "misconduct," might not merit condemnation as a denial of due process.  On the other hand, the right need not be identified at such a level of particularity as to focus only on fabrication of evidence by [one] acting in an investigating capacity....

We think the right at issue in this case is appropriately identified as the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity.  Understood this way, we conclude that the right at issue is a constitutional right, *provided that the deprivation of liberty of which [Plaintiff-Appellant] complains can be shown to be the result of [Defendant-Appellee's] fabrication of evidence.*

Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000) (emphasis added).  See also Henry v. City of New York, No. 02 Civ. 4824(JSM), 2003 WL 22077469, at *4 (S.D.N.Y. Sept. 8, 2003) ("while there is no constitutional right to be free from having evidence fabricated against an individual, the offense rises to a constitutional violation if one is *deprived of his liberty because of the fabrication*.... In this case, it is a question of fact whether Plaintiff's deprivation of liberty (his incarceration between his arrest and his release) was *caused by the fabrication of evidence*.") (emphasis added; citing Zahrey, 221 F.3d at 348).

In the case at bar, Plaintiff alleges that the statement and report were used as part of the evidence against Plaintiff.  But, Plaintiff was not jailed directly because of, or as a result of, the statement or the report.  This is not a case where an alleged victim made a false statement to the police, which the police knew to be false, and which was the backbone of a criminal action.  In the present case, Plaintiff was being apprehended on suspicion of having committed other crimes, including burglary, and then refusing to comply with the lawful commands of the arresting officers to drop the deadly weapon (axe) he was carrying.  That was the scenario that directly led to Plaintiff facing criminal charges and jailing.  As such, Defendant Eggers' report, and the statement of Plaintiff's sister contained in that report, did not directly impact on, or *result in*, Plaintiff's loss of liberty - even if the statement were false.  Plaintiff has not met the standard for pleading this claim.

In light of the foregoing, Plaintiff has failed to allege sufficient facts upon which to state a claim for relief for fabrication of evidence and denial of due process.  Therefore, those claims are dismissed.

### 9.  Claims of Improper Training and Denial of Due Process

In light of this Court's determination concerning use of excessive force in Section III.C.1, *supra*, the Court finds that Plaintiff's claims of improper training and denial of due process fail, as well.  Regardless of the training Syracuse police officers are provided with, the Court has found that their response and actions in this case in apprehending Plaintiff were not excessive or unconstitutional.  Therefore, no impropriety has been found to be supported from the facts of the case.  Furthermore, Plaintiff's argument that the police officers should have employed the use of pepper spray, as an alternative to bullets, in effect boils down to a claim that the Syracuse Police

28

Department has a custom or policy of using deadly force regardless of the situation faced or alternatives available.  Such a claim is unbelievable on its face, and is also unsupported factually by the remainder of Plaintiff's pleadings.

In light of the foregoing, Plaintiff has failed to allege sufficient facts upon which to state a claim for relief for improper training and denial of due process.  Therefore, those claims are dismissed.

## 10.  Claim of Excessive Bodily Restraint & Due Process Violations

Defendants are correct that, according to Plaintiff's Second Amended Complaint (Dkt. No. 12) at ¶¶ 86-88, these claims pertain only to Defendant Onondaga County Sheriff's Department and its Deputies.  Nothing is plead as to the involvement of the Syracuse Police Department or officers in these claims.  As such, these claims are dismissed as against Defendants Syracuse Police Officers.

## 11.  Claimed Deliberate Indifference to Medical Needs & Due Process Violations

Defendants are correct that, according to Plaintiff's Second Amended Complaint (Dkt. No. 12) at ¶¶ 89-91, these claims pertain only to Defendant Onondaga County Sheriff's Department and its Deputies.  Nothing is plead as to the involvement of the Syracuse Police Department or officers in these claims.  As such, these claims are dismissed as against Defendants Syracuse Police Officers.

Given the disposition of Plaintiff's claims, as discussed above, the Court hereby grants Defendants' Motion to dismiss (Dkt. No. 36).

## IV.  Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 35) is **GRANTED**; and it is further

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 36) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint, Amended Complaint and Second Amended Complaint (Dkt. Nos. 1, 5, 12) are **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:       January 16, 2007
             Albany, New York


Lawrence E. Kahn
U.S. District Judge